**OHIO STATE HOME SERVICES, INC., Appellant,**

v.

**BETTER BUSINESS BUREAU OF AKRON, INC., Appellee.**

[Cite as *Ohio State Home Serv., Inc. v. Better Business Bur. of Akron, Inc.* (1993), 89 Ohio App.3d 732.]

Court of Appeals of Ohio,
Summit County.

No. 16039.

Decided Aug. 4, 1993.

*Kenneth Baker,* for appellant.

*Mathew Oby* and *Frederick Corns,* for appellee.

BAIRD, Presiding Judge.

This cause comes before the court upon the appeal of Ohio State Home Services, Inc. (more commonly known by its franchised name, "Ohio State Waterproofing, Inc.") from an order of the Summit County Court of Common Pleas granting summary judgment in favor of the Better Business Bureau of Akron ("BBB"). We affirm.

Ohio State Waterproofing is in the business of waterproofing the basements of residential properties. It was a member of the Better Business Bureaus of several different communities. Prior to 1990, each bureau compiled its own data and issued its own reports on Ohio State Waterproofing to any consumers inquiring about the company.

In 1990, however, the national policy of the BBB changed. The new policy required a single bureau to issue a report on each company. As Ohio State Waterproofing was headquartered in Macedonia, Ohio, all complaints were then compiled by the Akron BBB and a single report prepared.

In consolidating the complaints from the several BBBs with reports on the company, the Akron BBB discovered that for the period August 1987 through August 1990, nine complaints were filed in Akron, one in Canton, sixteen in Cleveland, and eight in Youngstown.

Of the thirty-four complaints received, the mediation process used by the BBB was completed on twenty-six. The mediation process usually included an intake interview to determine if a consumer's complaint qualified for BBB mediation, the submission of a written complaint by the consumer, a written reply by the company, and forwarding of the reply to the consumer. Mediation terminated when each dispute was resolved or when an impasse was reached.

After examining each of the twenty-six complaints and the company's handling of those complaints, the BBB concluded that there was a pattern to the complaints and issued the following report:

"According to information supplied by the company, Ohio State Home Services began business in January of 1978.

"For the three-year reporting period, the Better Business Bureaus in Akron, Canton, Cleveland and Youngstown have received complaints from customers who allege [1] inability to effect cancellation under the three day cancellation clause in their contracts; [2] demands by the company for payment of delivered materials when contracts were canceled within three days; [3] high-pressure sales tactics; and [4] dissatisfaction with aspects of the services performed.

"Ohio State Home Services was responsive to these complaints by canceling contracts, refunding deposits, performing additional services, providing explanations of their position on complaints and attempting to satisfy each complainant.

"The Bureau does not endorse, recommend or disapprove of any product, service or company."

Based upon this report, which was read in its entirety to consumers inquiring about Ohio State Waterproofing, the company filed suit against the BBB alleging breach of the membership contract, tortious interference with business relationships, and defamation. A motion for summary judgment made by the BBB was sustained by the trial court. Ohio State Waterproofing now appeals, asserting a single assignment of error:

"The lower court erred in granting appellee's motion for summary judgment by reason that there exists material issues of fact precluding summary judgment as a matter of law."

The majority of appellant's arguments go to the claim in defamation. In regard to this claim, the trial court held that the BBB enjoyed a qualified privilege as to the information disseminated and, therefore, could not be held liable for defamation.

 "Defamation" is defined as a false publication or statement causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business. *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 21 OBR 143, 486 N.E.2d 1220. Appellant contends that the report issued was false and, therefore, defamatory in that the complaints made had no basis in fact.

 For public policy reasons, it has been held that Better Business Bureaus have a qualified privilege against liability for defamation. *Patio World v. Better Business Bur., Inc.* (1989), 43 Ohio App.3d 6, 538 N.E.2d 1098. This means that any communication made by the BBB is privileged, provided that it is made in good faith on a subject matter in which the BBB has an interest, right, or duty, is made to a person having a corresponding interest or duty (the inquiring customers), on a privileged occasion, and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. *Patio World* at 9, 538 N.E.2d at 1101, citing *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 72 O.O.2d 134, 331 N.E.2d 713.

 Even with this qualified privilege, Ohio State Waterproofing contends that the BBB is liable for defamation because the statements were made with "actual malice." While it is true that proof of "actual malice" will defeat a qualified privilege, it must be shown that the statements were made with knowledge that the statements were false or with reckless disregard for the truthfulness of the statements. *Patio World,* 43 Ohio App.3d at 10–11, 538 N.E.2d at 1102–1104. See, also, *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 611 N.E.2d 955.

Ohio State Waterproofing alleges that the report issued by the BBB was made with reckless disregard for the truth because no investigation had been made by the BBB to determine if there was merit to the claims. In support of this argument, the company cites the syllabus in *Patio World,* wherein it states:

"The bureau's employees must act impartially and in good faith; this requires them to make a thorough and complete investigation and to fully and accurately report information only from reliable sources."

A closer look at *Patio World,* however, reveals that an "investigation" into the veracity of all complaints made is not required.

In *Patio World,* the court addressed three statements which were made by the BBB to inquiring customers. In its prepared report, the BBB stated that "[a]ccording to our files, [Patio World] has an unsatisfactory business performance record * * * " and "our files show a pattern of failure to eliminate the causes of customer complaints" as evidenced by the recurring nature of similar complaints. The court found that these two statements were substantiated by complaints found in the BBB's files and were covered by the BBB's qualified privilege.

A third statement, however, was complained of in *Patio World.* This statement was not included in the written report which was to be read verbatim by BBB's employees. Instead, this statement was extraneous to the report and was offered by employees upon further questioning by inquiring consumers. Employees told consumers that "[Patio World] made no effort to resolve complaints." The court found that this statement was not supported by BBB's own files and could be construed by a jury to have been made with reckless disregard for the truthfulness of the statement. Stated another way, the court found that BBB made statements without "investigating" whether they were indeed true. That is, the BBB did not review the complaints in its files and the conclusion reached was not substantiated by its own information. Nowhere does the court suggest that the BBB was required to conduct an independent investigation into the merits of each complaint. The investigation required goes only as far as the conclusion which is made by the BBB.

In this case, there were no extraneous comments made. The only statements complained of were those in the report prepared for recitation to inquiring customers. To paraphrase the contents of this report, the BBB said that it received four kinds of complaints from customers and that these complaints had been resolved by Ohio State Waterproofing. A review of the record shows that these statements were true. The truth of the statements is, of course, a complete defense to a claim of defamation. R.C. 2739.02. Summary judgment as to the defamation claim was, therefore, appropriate.

■ Similarly, summary judgment was appropriately granted as to the claim for tortious interference with business relationships. The qualified privilege and the requirement that the movant show actual malice are the same for business interference as those discussed in regard to defamation. *Hahn.*

■ The third claim, for breach of contract, alleges violation of the membership application between Ohio State Waterproofing and the BBB in the termination of the company's membership in the BBB. That contract contained an

internal procedure for appeal, stated that the company could reapply for membership after a reasonable time, and stated that the decision of the BBB was final.

The contract contained two clauses which BBB alleges were violated by Ohio State Waterproofing. First, the contract states that a member may be removed for cause if the BBB believes the member's conduct is at variance with the standards of membership or for any other cause. Second, the contract states that it is a violation to use the BBB name or logo in company advertisements or promotions. Evidence in the record supports that Ohio State Waterproofing violated these terms and, therefore, there was no breach of contract when its membership was terminated.

The assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE and DICKINSON, JJ., concur.