SMITH, Appellant,

v.

AMERIFLORA 1992, INC.; Sherman R. Smoot Company et al., Appellees.*

[Cite as *Smith v. Ameriflora 1992, Inc.* (1994), 96 Ohio App.3d 179.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–970.

Decided July 19, 1994.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1994), 71 Ohio St.3d 1427, 642 N.E.2d 635.

*Larry R. Zingarelli* and *William J. O'Malley*, for appellant.

*Buckingham, Doolittle & Burroughs, John W. Ferron* and *Donald B. Leach*, for appellees Sherman R. Smoot Company, Lewis R. Smoot, Sr., Ruscilli Construction Co., Inc., L. Jack Ruscilli, and Pat Reid.

---

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Delbert Smith, appellant, from the June 1, 1993 decision and June 15, 1993 judgment entry of the Franklin County Court of Common Pleas which granted summary judgment in favor of appellees. On appeal, appellant sets forth the following assignments of error:

"1. The trial court committed reversible error when it granted summary judgment on Plaintiff–Appellant's claim against L. Jack Ruscilli and Ruscilli Construction Company, Inc., for defamation.

"2. The trial court committed reversible error when it granted summary judgment on Plaintiff–Appellant's claim against L. Jack Ruscilli and Ruscilli Construction Company, Inc., for tortious interference with a contractual relationship.

"3. The trial court committed reversible error when it granted summary judgment on Plaintiff–Appellant's claim against L. Jack Ruscilli and Ruscilli Construction Company, Inc., for intentional infliction of serious emotional distress.

"4. The trial court committed reversible error when it granted summary judgment on Plaintiff–Appellant's claim against the Sherman R. Smoot Company and Lewis Smoot, Sr., for defamation.

"5. The trial court committed reversible error when it granted summary judgment on Plaintiff–Appellant's claim against the Sherman R. Smoot Company and Lewis Smoot, Sr., for tortious interference with a contractual relationship.

"6. The trial court committed reversible error when it granted summary judgment on Plaintiff–Appellant's claim against the Sherman R. Smoot Company and Lewis Smoot, Sr., for intentional infliction of serious emotional distress."

The history of this case is as follows: appellant filed his initial complaint on November 4, 1991 and later amended his complaint. A number of the initial parties were dismissed either by the trial court or by appellant. The remaining parties involved in this appeal are: the Sherman R. Smoot Company, Lewis R. Smoot, Sr., Ruscilli Construction Company, Inc., L. Jack Ruscilli and Pat Reid. This court notes that Pat Reid was an employee of the Ruscilli Construction Company, however, none of the assignments of error pertains directly to any statements allegedly made by Pat Reid. Furthermore, the amended complaint raised three causes of action against E.J. Edminister, who was the President of Ruscilli Construction Company, Inc. However, it appears that E.J. Edminister was never served with a complaint or an amended complaint. When appellees moved for summary judgment in the trial court, they moved for summary judgment on the claims pertaining to E.J. Edminister and Pat Reid insofar as the amended complaint alleged that Ruscilli Construction Company was vicariously liable for the actions of Edminister and Pat Reid.

The trial court granted summary judgment in favor of Ruscilli Construction Company, Inc., L. Jack Ruscilli, Pat Reid, Lewis Smoot, Sr., and the Sherman R. Smoot Company of Ohio. Appellant then appealed to this court.

Ameriflora 1992, Inc. was a not-for-profit Ohio corporation organized to implement a floral exposition in Columbus. On March 16, 1989, appellant was hired by Ameriflora to serve, initially, as a construction coordinator for the exposition. One of appellant's many initial duties was to arrange hiring interviews for architects and engineers. In the fall of 1989, Ameriflora interviewed three construction companies, including a joint venture that was comprised of the Ruscilli Construction Company and the Sherman R. Smoot Company ("Ruscilli/Smoot"). Appellant recommended that Ruscilli/Smoot be selected as the

construction management firm. The joint venture's responsibilities on the project were divided such that Ruscilli Construction handled the administrative aspects of the construction while the Smoot Company focused on the field work. Appellant acted as a liaison between the architects, landscape architects, engineers and the Ruscilli/Smoot personnel.

In February 1990, appellant entered into a romantic relationship with Pat Reid, who was a scheduler employed by the Ruscilli Construction Company. On November 5, 1990, appellant was arrested at the Ameriflora job site on charges of gross sexual imposition, rape and kidnapping. Appellant's arrest was precipitated by a series of events that had occurred during the previous weekend and which involved appellant and Pat Reid. These facts are in dispute and, in fact, the charges were later dismissed. However, as a result of his arrest, appellant was suspended with pay from his job at Ameriflora on November 6, 1990. At that time, Thomas E. Fontana, Ameriflora's general manager, instituted an investigation into appellant's job performance and the circumstances of his arrest. Fontana requested a meeting with E.J. Edminister and L. Jack Ruscilli and on November 13, 1990, conducted this meeting to discuss appellant's job performance and his recent arrest. Fontana asked Edminister and Ruscilli for their opinions as to appellant's involvement with Reid and his performance on the job. At the conclusion of the meeting, Fontana prepared a memorandum containing the comments of Edminister and Ruscilli.

On November 15, 1990, Terrie TerMeer, Ameriflora's director of affirmative action and equal employment opportunity, conducted a telephone conversation with Lewis Smoot, Sr. She asked Smoot for his opinion as to whether or not appellant would be effective in functioning on the Ameriflora project after his arrest. (Smoot Affidavit, paragraph 4.) The substance of this discussion was also summarized in a memorandum dated November 19, 1990. Subsequently, on December 3, 1990, Fontana terminated appellant from his position with Ameriflora.

In all six of his assignments of error, appellant argues that the trial court committed reversible error by granting summary judgment. Summary judgment is proper when reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in its favor. Civ.R. 56(C). See, also, *Lytle v. Columbus* (1990), 70 Ohio App.3d 99, 103, 590 N.E.2d 421, 424. Subsequent to the *Lytle* decision, the Ohio Supreme Court held that "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. (*Celotex v. Catrett* [1986], 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265], approved and followed.)" *Wing v. Anchor*

*Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. This court has adopted the rationale in *Wing* and held that the duty of a party resisting a motion for summary judgment is more than resisting the allegations in the motion. *Baughn v. Reynoldsburg* (1992), 78 Ohio App.3d 561, 563, 605 N.E.2d 478, 480. Therefore, appellant must affirmatively demonstrate the facts which would entitle him to relief. *Id.*

■ Appellant's first and fourth assignments of error argue that the trial court erred when it granted summary judgment in favor of L. Jack Ruscilli, Ruscilli Construction Company, Inc., Lewis Smoot, Sr., and the Sherman R. Smoot Company on appellant's defamation claims. In an action for defamation, a plaintiff must show that a publication to a third person was made for which the defendant is responsible, that the recipient understood the defamatory meaning, and that the defamatory statement is actionable. See *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 243, 72 O.O.2d 134, 138, 331 N.E.2d 713, 718. In *Hahn,* the Supreme Court of Ohio also noted that a qualified privilege is often recognized as a defense to a defamation action. The court explained that the essential elements of qualified privilege are good faith, an interest to be upheld, a statement that is limited in its scope for that purpose, a proper occasion, and publication in a proper manner and to the proper parties only. The *Hahn* court also noted that it is generally held that if a defendant publishes defamatory words to an interested party *at that party's request or solicitation,* there is such a relationship between the parties to justify the communication. *Id.* at 246, 72 O.O.2d at 140, 331 N.E.2d at 720. See, also, *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 114, 573 N.E.2d 609, 612–613.

■ In the instant action, Fontana initiated the meeting with Edminister and Jack Ruscilli, and, in that meeting, asked them to discuss the situation as they saw it surrounding appellant's involvement with Reid and his performance on the job. (Fontana Depo. at 38.) Ruscilli's affidavit states that Fontana approached Ruscilli and asked him for his opinion as to appellant's job performance, technical competence, and how the arrest might affect appellant's ability to function. A review of the record indicates that Ruscilli and Ruscilli Construction Company had a common interest with Fontana as the general manager of Ameriflora, in seeing that the project was handled in a professional and efficient manner. Thus, Ruscilli's and Edminister's comments clearly came within the scope of their common interest. As stated by the court in *Hahn:*

"A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it. Frequently, in such cases, there is a legal, as well as a moral, obligation to speak. * * * " *Id.,* 43 Ohio St.2d at 244, 72 O.O.2d at 138, 331 N.E.2d at 718.

■ Furthermore, a review of the statements made by Ruscilli and Edminister demonstrates that the statements were all limited in their scope and were published to the proper parties only. Thus, the record reflects that the statements made by Edminister and Ruscilli were qualifiedly privileged. However, if appellant could demonstrate some evidence of actual malice, then Edminister and Ruscilli would lose the protection of a qualified privilege. In this regard, there must be evidence presented by appellant beyond the mere allegations contained in the complaint. See *Wing, supra; Evely v. Carlon Co.* (1983), 4 Ohio St.3d 163, 4 OBR 404, 447 N.E.2d 1290. Once qualified privilege is shown, it is imperative that appellant show the untruth of the statements and actual malice in order to defeat the privilege and justify a trial on the merits. *Contadino v. Tilow* (1990), 68 Ohio App.3d 463, 589 N.E.2d 48.

In order to defeat a qualified privilege, one must demonstrate that the statements were made with actual malice, that is, "with knowledge that the statements are false or with reckless disregard of whether they were false or not. (*New York Times Co. v. Sullivan* [1964], 376 U.S. 254 [84 S.Ct. 710, 11 L.Ed.2d 686], followed.)" *Hahn*, paragraph two of the syllabus; *Jacobs, supra*. In the instant action, appellant has failed to demonstrate that Jack Ruscilli or Edminister made statements which they knew to be false, or alternatively, made with reckless disregard for the truth. As stated by the Supreme Court of Ohio:

"The cited cases and other appellate court decisions have caused some confusion regarding the applicable definition of 'actual malice' in a qualified privilege case. Therefore, we hold that when a defendant possesses a qualified privilege regarding statements contained in a published communication, that privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice. In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs*, 60 Ohio St.3d at 115–116, 573 N.E.2d at 614.

Appellant has failed to show that Jack Ruscilli or Edminister made any statements that they knew to be false, or with reckless disregard as to their truth or falsity.

In *Jacobs, supra*, the Supreme Court of Ohio further articulated that actual malice could *not* be inferred from evidence of ill-will, personal spite, or ulterior motive. *Id.*, 60 Ohio St.3d at 118, 573 N.E.2d at 616. Ruscilli's affidavit clearly states that he did not act with any ill-will and that he made the statements out of his concern for the Ameriflora project and his concern that its construction be handled in an efficient and professional manner. Appellant's assertion in his affidavit that he "believed" that appellees acted with actual malice is not evidence and is not sufficient to withstand a motion for summary judgment. See *Wing,*

*supra.* Liability cannot be predicated simply upon the characterization of such conduct as being malicious. See *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 250, 75 O.O.2d 291, 294, 348 N.E.2d 144, 148; *Contadino, supra.* Accordingly, appellant's first assignment of error is overruled.

For similar reasons, we overrule appellant's fourth assignment of error with regards to Lewis R. Smoot, Sr. and the Sherman R. Smoot Company. Smoot was contacted by Terrie TerMeer, director of affirmative action and equal employment opportunity. She approached Smoot and asked him for his opinion as to whether or not appellant could be effective in functioning on the Ameriflora project after his arrest. See *Hahn* and *Jacobs, supra.* Again, Smoot had a common interest and had a duty to discuss his opinion of appellant's effectiveness when approached by TerMeer. Thus, Smoot's comments were again qualifiedly privileged. Furthermore, appellant has failed to provide this court with any evidence to demonstrate that Smoot acted with actual malice as defined by the Ohio Supreme Court in *Jacobs, supra.* Accordingly, appellant's fourth assignment of error is overruled.

Appellant's second and fifth assignments of error argue that the trial court erred when it granted summary judgment as to appellant's claims against Ruscilli, Smoot, and their respective companies, for tortious interference with a contractual relationship. The tort of business interference occurs when a person, *without a privilege,* induces or otherwise purposely causes a third party not to enter into or continue a business relationship. *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 9 O.O.3d 216, 379 N.E.2d 235.[1]

---

1. The dissent argues that the case of *Walter v. Murphy* (1988), 61 Ohio App.3d 553, 573 N.E.2d 678, from the Court of Appeals for Wayne County, modified the "privilege" standard of *Juhasz, supra,* and replaced it with the test of whether or not one's interference is "improper" according to 4 Restatement of the Law 2d, Torts (1979) 20, Section 766B. The dissent also cites *A & B–Abell Elevator Co. v. Columbus/Central Ohio Bldg. & Constr. Trades Council* (Sept. 30, 1993), Franklin App. No. 92AP–1540, unreported, 1993 WL 387179, appeal pending, case No. 93–2415. This court notes that the Supreme Court of Ohio has not yet adopted this approach, nor has it adopted Section 766 of the 1979 version of the Restatement, and, in fact, continues to cite *Juhasz, supra,* as the leading case on tortious interference with a business relationship or contract. See *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 16, 552 N.E.2d 207, 212–213. See, also, *Schultz v. Elm Beverage Shoppe* (1988), 40 Ohio St.3d 326, 327, 533 N.E.2d 349, 351, wherein the court quoted from the 1979 version of the Restatement, and stated in pertinent part:

   "A person 'who otherwise would be liable for a tort is not liable if he acts in pursuance of and within the limits of a *privilege* * * *.' 4 Restatement of the Law 2d, Torts (1979) 355, Section 890. *The term 'privilege' denotes the existence of circumstances that justify, or excuse, conduct that would ordinarily subject the actor to liability.* See 1 Restatement of the Law 2d, Torts (1965) 17, Section 10(1) * * *." (Emphasis added.)

   This court has also consistently applied *Juhasz, supra,* in cases such as the case at hand. See *Wolf v. McCullough–Hyde Mem. Hosp.* (1990), 67 Ohio App.3d 349, 355, 586 N.E.2d 1204,

■ The applicability of a qualified privilege has been recognized by Ohio courts in both defamation and tortious interference cases. See *Smith v. Klein* (1985), 23 Ohio App.3d 146, 148, 23 OBR 387, 390, 492 N.E.2d 852, 855–856; *Donald G. Culp Co. v. Reliable Stores Corp.* (1983), 14 Ohio App.3d 161, 14 OBR 178, 470 N.E.2d 193; *Juhasz, supra; Pearse v. McDonald's Sys. of Ohio, Inc.* (1975), 47 Ohio App.2d 20, 1 O.O.3d 164, 351 N.E.2d 788. As stated before, appellees' statements to Fontana and TerMeer were privileged because of the business relationship which existed between Ameriflora and the Ruscilli/Smoot joint venture. Again, in order to overcome the defense of qualified privilege, appellant must demonstrate that appellees acted with actual malice. *Ohio State Home Serv., Inc. v. Better Business Bur. of Akron, Inc.* (1993), 89 Ohio App.3d 732, 627 N.E.2d 602. As stated by the Summit County Court of Appeals:

"Similarly, summary judgment was appropriately granted as to the claim for tortious interference with business relationships. *The qualified privilege and the requirement that the movant show actual malice are the same for business interference as those discussed in regard to defamation. Hahn.*" (Emphasis added.) *Id.* at 736, 627 N.E.2d at 605. See, also, *Larson v. Mullett* (Nov. 3, 1993), Knox App. No. 92–CA–26, unreported [1993 WL 472858].

The dissent discusses the statements made by Edminister, who stated that his company would not remain on the project if appellant was permitted to return to work. Essentially, Edminister made the statement that the female employees were scared, and that Ruscilli's employees were uncomfortable with appellant. Initially, we note that Edminister is not a party to this case, as he was never served with the complaint. Furthermore, appellant has failed to produce any evidence to demonstrate that Edminister's statements, that female employees were scared and/or uncomfortable, were false or were made with reckless disregard for the truth. Additionally, these statements were made to Fontana, who requested the meeting, after appellant's arrest. See *Hahn; Jacobs, supra.*

Appellant and the dissent also argue that Smoot's statements to Terrie TerMeer, that appellant would not be effective and could not do the job under the present circumstances, infers malice. It is clear from the record that the "circumstances" referred to was the fact that appellant had been arrested. Again, Smoot's statements were qualifiedly privileged, as TerMeer was the one to request the meeting, and asked Smoot his opinion on the matter.

■ Appellant and the dissent argue that the above statements are sufficient to infer malice, and that, therefore, summary judgment was improper as to appellant's tortious interference claims. This court agrees with the statement

1208–1209; *James v. Big Bear Stores Co.* (Jan. 27, 1994), Franklin App. No. 93AP–325, unreported, 1994 WL 21751.

that *actual* malice, in the sense of ill-will, spite or hatred, on the part of the interferer, is not a necessary element of a tortious interference claim. See *Reichman v. Drake* (1951), 89 Ohio App. 222, 45 O.O. 444, 100 N.E.2d 533. However, *once a qualified privilege has been asserted,* "actual malice," as defined in *Jacobs,* must be demonstrated in order to defeat the qualified privilege defense. See, also, *Ohio State Home Serv., Inc.; Larson, supra.*

Appellant's claims of tortious interference with contract depend upon the same evidence as his defamation claims. For the same reasons as those articulated in the first and fourth assignments of error, we find that appellant has failed to demonstrate actual malice and has therefore failed to defeat appellees' qualified privilege defense.

■ A tortious interference action also requires a showing that appellees' actions induced or caused a third party to discontinue a business relationship with appellant. *Contadino, supra.* Fontana testified that the statements made by various employees were only one factor in his decision to terminate appellant. Fontana testified that, as his investigation continued, it became more and more apparent that there were performance problems with appellant through the course of his work history at Ameriflora. Fontana's affidavit specifically pointed to a written reprimand on April 24, 1990, wherein he gave appellant a reprimand for engaging in a physical altercation with another Ameriflora manager and told him that if there was another such physical altercation he would be terminated. Furthermore, liability may be avoided by showing that appellees had in mind some lawful objective or that they were merely exercising a legal right, even if the effort to secure the discharge is prompted by ill-will. *Contadino, supra.*

In order to withstand a motion for summary judgment, appellant must produce evidence for which he would have the burden of production at trial. *Wing, supra.* Appellant has failed to produce evidence that appellees acted without a privilege in inducing Fontana to terminate appellant's employment with Ameriflora. Appellant has further failed to produce evidence that the statements of appellees were made with actual malice. Furthermore, even if we were to assume that appellees' statements induced Fontana into making the decision to terminate appellant, clearly, appellees had in mind a lawful object, *i.e.,* the successful completion of the Ameriflora project. See *Contadino, supra.* For all of the above reasons, appellant's second and fifth assignments of error are overruled.

■ Appellant's third and sixth assignments of error argue that the trial court erred in granting summary judgment on his emotional distress claims. However, a review of the record makes it clear that appellant has not met the test set forth in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421,

453 N.E.2d 666, wherein the Supreme Court of Ohio recognized the tort of intentional infliction of emotional distress and defined it as follows:

" 'One who by *extreme and outrageous conduct* intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.' * * * " (Emphasis added.) *Id.* at 374, 6 OBR at 426, 453 N.E.2d at 671, quoting from the Restatement of the Law 2d, Torts (1965) 71, Section 46(1).

The Supreme Court utilized the definition of "extreme and outrageous conduct" found in Comment *d,* Section 46 of the Restatement of the Law 2d, Torts, which states:

" ' * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. * * * ' " *Yeager, supra,* at 374–375, 6 OBR at 426, 453 N.E.2d at 671, quoting from the Restatement.

■■■■■ In addition, Ohio courts have recognized that the qualified privilege defense is applicable to actions for intentional infliction of emotional distress. See *Foster v. McDevitt* (1986), 31 Ohio App.3d 237, 239, 31 OBR 520, 523, 511 N.E.2d 403, 406. As stated previously, the statements made by Ruscilli, Edminister and Smoot were qualifiedly privileged. Furthermore, the distress identified by appellant does not constitute severe emotional distress. Severe emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with a mental distress engendered by the circumstances of the case. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 119, 451 N.E.2d 759, 765. The emotional distress alleged must be serious. · *Yeager, supra.* Appellant's deposition testimony indicated that he felt a lack of self-esteem and that he did not sleep well. (Smith Depo. at 707–711, 783.) However, appellant did not seek any medical or psychological treatment. (Smith Depo. at 710–711.) A review of the relevant case law makes it clear that appellant failed to produce evidence sufficient to withstand a motion for summary judgment on his claim for intentional infliction of emotional distress. See *Kurtz v. Harcourt Brace Jovanovich, Inc.* (1990), 69 Ohio App.3d 267, 273, 590 N.E.2d 772, 776; *Sheets v. Rockwell Internatl. Corp.* (1990), 68 Ohio App.3d 345, 354, 588 N.E.2d 271, 276–277. Accordingly, appellant's third and sixth assignments of error are hereby overruled.

For the foregoing reasons, appellant's first, second, third, fourth, fifth and sixth assignments of error are hereby overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

DESHLER, J., concurs.

WHITESIDE, P.J., dissents.

WHITESIDE, Presiding Judge, dissenting.

Being unable to concur in the conclusions reached by the majority in certain respects, I must respectfully dissent.

This case was before the trial court on summary judgment and, accordingly, that court was required, pursuant to Civ.R. 56(C), to construe the evidence most strongly in favor of the nonmoving party (appellant) and grant judgment for appellees only if, when so construed, there are no genuine issues of material fact and, based upon the evidence so construed, reasonable minds could only conclude that appellees are entitled to judgment as a matter of law upon all issues.

Appellant's arrest upon serious criminal sex charges involving a person with whom appellant had had a romantic relationship but who was employed by appellee Ruscilli was obviously a matter for concern and a matter for discussion, even though those charges were later dismissed. A meeting was held among most of the appellees, apparently initiated by Ameriflora, appellant's employer.

The majority opinion sets forth the general principles concerning claims for defamation, tortious interference with contract, and infliction of emotional distress, whether intentional or negligent.[2] However, this matter was before the trial court upon motion for summary judgment, and both parties presented extensive evidence. There was no failure of appellant, the nonmoving party, to produce evidence upon any issue for which appellant would bear the burden of production at trial, such as is contemplated in the third paragraph of the syllabus of *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. The only matter to which appellant did not produce direct evidence was what occurred at the meeting between some of the appellees, personal knowledge of which appellant would not have, since he was neither at the meeting nor knowledgeable as to what was said between the parties.

---

**2.** However, the majority miscites *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 72 O.O.2d 134, 331 N.E.2d 713, to hold that a mere request for information by an interested person is sufficient to create a qualified privilege in the person responding. Neither the syllabus rule nor the majority opinion in *Hahn* so hold. Rather, the majority opinion in *Hahn* states that the person communicating must have a duty to speak or such an interest as to necessitate his speaking.

As noted in the opinion of *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 120, 570 N.E.2d 1108 (decided the same day as *Wing*):

"This court observes that upon a motion for summary judgment pursuant to Civ.R. 56, the burden of establishing that the material facts are not in dispute and that no genuine issue of fact exists is on the party moving for the summary judgment. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46."

The same conclusion is reached in *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129, where it is stated at 346, 617 N.E.2d at 1132:

"Under Civ.R. 56, summary judgment is proper when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274."

Here, there is no issue upon which no evidence has been adduced upon summary judgment and, accordingly, all of the evidence must be construed most strongly in favor of appellant, the nonmoving party, in order to determine whether a genuine issue of material fact exists and whether appellees, the moving parties, are entitled to judgment as a matter of law because reasonable minds can reach but one conclusion upon the evidence adduced when construed in favor of the nonmoving party.

As to the issue of malice, reasonable minds could reach different conclusions upon the evidence. There are two different types of malice involved here. With respect to the defamation action, it is arguable that actual malice must be proved and that an inference of a qualified privilege could be reached from the evidence.[3] With respect to the tortious-interference-with-contract contention, however, actual malice is not required, but constructive malice is sufficient to combat the claim of "privilege" arising from a business relationship.[4] See 4 Restatement of the Law 2d, Torts (1979), Section 766. The majority confuses the elements of

3. The syllabus in *Hahn* does refer to actual malice. However, the three-justice dissent was specifically directed to the malice issue and would have held malice, not actual malice, sufficient to overcome a qualified privilege with respect to defamation. See, however, the second paragraph of the syllabus of *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609.

4. The majority refers to "privilege" in reference to tortious interference with contract. However, as stated in the second edition of the Restatement, the proper test is whether the interference is "improper." This determination involves, *inter alia*, consideration of motive,

tortious interference with contract with those for defamation.[5] Motive is not an element of defamation, and truth is a complete defense, although motive is relevant evidence upon the question of actual malice in the case of a qualified privilege.

In *Developers Three v. Nationwide Ins. Co.* (1990), 64 Ohio App.3d 794, 582 N.E.2d 1130, this court expressly adopted present Section 766 of the Restatement, which states:

" 'One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.' * * * " *Id.* at 798, 582 N.E.2d at 1133.

Although the majority refers to "privilege," the only "privilege" referred to is that to speak truthfully. There is no reference in the majority opinion to any basis for appellees Ruscilli and Smoot to demand that Ameriflora fire appellant under a threat that would breach their contracts if he was not fired. Even assuming that Ruscilli and Smoot had a "privilege" to speak as to appellant's job performance because they were requested to attend the second meeting, it is not such speaking that is the gravamen of the claim of tortious interference with contract. Rather, such claim is founded upon the Ruscilli and Smoot demand that appellant be fired under threat that they would otherwise leave the job and refuse to perform their contract. This furnishes evidence of the motive element of tortious interference with contract. Only if Ruscilli and Smoot had a right to demand that appellant be fired as a condition of continued performance of their contract could a claim of "privilege" [6] arise with respect to tortious interference with contract. There is no evidence of a privilege to demand appellant be fired, nor even a contention it exists. In this regard, the majority opinion is inconsistent with our opinion in *A & B–Abell Elevator Co. v. Columbus/Central Ohio Bldg. & Constr. Trades Council* (Sept. 30, 1993), Franklin App. No. 92AP–1540, unreported at 31–32, 1993 WL 387179, appeal pending, case No. 93–2415:

---

that is, purpose to interfere in the contractual relationship. See *Walter v. Murphy* (1988), 61 Ohio App.3d 553, 573 N.E.2d 678, which modified the case cited by the majority, *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 9 O.O.3d 216, 379 N.E.2d 235, so as to adopt the "improper" standard of the Restatement instead of the "privilege" standard of *Juhasz.*

**5.** Even if "actual" malice be required for a tortious-interference-with-contract case, "actual malice" is of the nature defined by the syllabus of *Preston v. Murtz* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, rather than the *Jacobs* standard, applicable to defamation cases.

**6.** Even the Ninth District Court of Appeals, which interjected "privilege" in *Juhasz, supra,* abandoned that doctrine, modified *Juhasz* and adopted the Restatement in *Walter, supra.*

"In order to conclude that a person is liable for tortious interference with a prospective business relationship, a finder of fact must find that the person's conduct interfered with the business rights of another and, taking into consideration the situation and relationship of the parties, the person's conduct in interfering was improper. Factors for determining whether a person's interference is improper are set forth in 4 Restatement of the Law 2d, Torts (1979) 26, Section 767 * * *[.]

" * * *

"The issue in each case is whether the interference is improper or not under the circumstances and whether, upon considering the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. * * * In determining whether the interference is improper, it may become important to determine whether the actor was motivated, in whole or in part, by a desire to interfere with the other's contractual relations. * * *"

Furthermore, it has been held that summary judgment should not be granted "where motive and intent play leading roles" in determining liability of a defendant. *White Motor Co. v. United States* (1963), 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738. Similarly, questions involving credibility cannot be resolved on summary judgment. *Killilea v. Sears, Roebuck & Co.* (1985), 27 Ohio App.3d 163, 27 OBR 196, 499 N.E.2d 1291.

Clearly, the conclusions reached by the trial court are permissible conclusions from the evidence only if the evidence is weighed by the trier of fact. Here, on the other hand, the evidence is to be construed most strongly in favor of appellant, the nonmoving party. When so construed, a reasonable trier of fact could reasonably make a finding that either actual malice or constructive malice, or both, was involved in the conduct of appellees Ruscilli and Smoot.

First, there was evidence that, prior to appellant's arrest and prior to any request by the employer Ameriflora, Ruscilli complained that appellant was not able to perform his job and, in addition, the project manager for Ruscilli/Smoot made comments to the same effect, and Ruscilli further stated that appellant was inept at the technical aspects of the job. These comments were made at a meeting requested by Ruscilli/Smoot's project manager, not by appellant's employer, Ameriflora. At the later meeting requested by the employer, Smoot stated categorically that appellant could not do the job under the present circumstances, without explanation of the circumstances. There was also an indication that appellant at one time was a subcontractor for Smoot and that some difficulty between them occurred. Smoot then suggested that Ameriflora determine a settlement with appellant and get him out of the picture and that he should be terminated.

In addition, defendant Ruscilli Construction Company threatened to quit the project if appellant were not fired by Ameriflora. Although obviously not conclusive, it is axiomatic that a threat to breach a contract and not finish a job if a particular employee of the other contracting party is not fired gives rise to a reasonable inference of actual malice as to such employee. That is the situation we have here. There is evidence from which actual malice can reasonably be inferred. Although such inference is not required to be made by a trier of fact, it is required to be made when the evidence is construed most strongly in favor of the nonmoving party, appellant. Under the apparent test set forth by the majority, actual malice could never be proved by circumstantial evidence and presumably could be proved only by an express admission of ill-will rising to the level of malice.

The majority states that no inference of malice can be drawn from Smoot's insistence that appellant be terminated. That conclusion, however, is based upon an incomplete and erroneous analysis of the evidence. First, it is stated that, during the conversation with Smoot, TerMeer "asked Smoot his *opinion*" on the matter. Her testimony suggests that she sought facts, not opinions, from Smoot, but he volunteered the opinions.[7] In addition, Smoot expressly indicated ill-will toward appellant, TerMeer's notes indicating that:

" * * * About a month ago, Lewis [Smoot] stated that he had personally talked to Del [plaintiff] about the 'facts of life' and warned him either 'get it all together' or he (Smoot) would deal with him (Del) [plaintiff]. * * * "

Clearly, both an inference of motive and an inference of malice can reasonably be made from this admission of Smoot that he would "deal" with appellant if he did not do what Smoot wanted.[8]

As to the claim for defamation, there also was conflicting evidence. There was evidence that many statements by both appellees Ruscilli and Smoot or by their employees that appellant was either unqualified or did not perform his job well were unsolicited and made prior to the meeting following appellant's arrest of the criminal charges, which were later dismissed. Appellant contends that these statements were untrue, and this is supported by job evaluations and pay raises given by the employer, as recent as one month before the incident. From these, it may reasonably be inferred that false, defamatory statements were made by appellees Ruscilli and Smoot, which were not protected by any type of privilege, and which also support the inference of actual malice, referred to above. See the

---

7. The majority relies upon the self-serving affidavit of Smoot which, at most, creates only an issue of fact, not establishes the fact.

8. This also is contradicted by Smoot's self-serving affidavit.

second paragraph of the syllabus of *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609.

The findings made by the trial court would be appropriate by a trier of fact weighing the evidence but are not appropriate when the evidence is construed most strongly in favor of appellant, the nonmoving party. The conclusions reached by the trial court as to the facts can be reached only by weighing the evidence and cannot be reached by construing the evidence most strongly in favor of appellant, the nonmoving party. Reasonable minds could differ as to the result on each of these issues, when the evidence is construed most strongly in favor of appellant, the nonmoving party. For that reason, I must dissent and would reverse the judgment and remand the cause to the trial court for further proceedings on the claims for tortious interference with contract and for defamation.

However, as to the claim for intentional or negligent infliction of emotional distress, I concur in the judgment affirming the trial court's decision. I do so not upon the basis of the nature of the conduct of appellees but, rather, upon the effect upon appellant. In his deposition testimony, appellant indicated that he felt a lack of self-esteem and did not sleep well. However, he sought no medical or psychological treatment and received none. Thus, as the majority opinion states, the distress appellant contends he suffered does not constitute severe emotional distress of the nature required for a claim for negligent or intentional infliction of emotional distress. For that reason, I concur in the judgment to the extent that the judgment of the trial court granting summary judgment with respect to the claim for intentional or negligent infliction of emotional distress is affirmed.