**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 10a0123n.06

No. 09-3140

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Feb 24, 2010**

LEONARD GREEN, Clerk

KEITH D. WILKEY,                                  )
                                                 )
    **Plaintiff-Appellant,**                   )    ON APPEAL FROM THE
                                                 )    UNITED STATES DISTRICT
v.                                               )    COURT FOR THE SOUTHERN
                                                 )    DISTRICT OF OHIO
GREG HULL; MILLIKIN &                            )
FITTON, L.P.A.,                                  )
                                                 )    **O P I N I O N**
    **Defendants-Appellees.**                 )
                                                 )
_____            )

Before:  **KENNEDY, MOORE, and WHITE, Circuit Judges.**

    **KAREN NELSON MOORE, Circuit Judge**.  In this diversity action, Plaintiff-Appellant

Keith Wilkey ("Wilkey") appeals the district court's dismissal of his state-law claims of tortious

interference with evidence and tortious interference with a business relationship.  He further appeals

the district court's adverse summary judgment ruling as to his state-law fraud claim.  For the reasons

stated below, we **AFFIRM** the district court's judgment.

## I.  BACKGROUND[1]

    Wilkey is a board-certified orthopedic surgeon who formerly had clinical privileges at

McCullough-Hyde Memorial Hospital ("the Hospital") in Oxford, Ohio.  According to Wilkey, in

2003, various committees at the Hospital conducted hearings to determine whether he should be

_____

[1]Because different claims were dismissed at different stages of litigation, we summarize only the contents of Wilkey's complaint in this section.  Additional evidence in the record is discussed below where relevant.

suspended, in part because of his allegedly inferior standard of care. In doing so, the committees relied on a report completed by an external reviewer, Dr. Edward Seasons ("Seasons"), who criticized Wilkey's standard of care. However, the Hospital requested a second external report due to concerns regarding Seasons's qualifications. That report was completed by Dr. James H. Ricciardi ("Ricciardi"), who found that Wilkey had "not deviated from the standard of care." Doc. 1 (Compl. at ¶ 13). The relevant Hospital committees, however, never saw Ricciardi's report.

The Hospital hired Defendant-Appellee Gregory Hull ("Hull"), a lawyer, to present the case for suspending Wilkey. According to Wilkey's complaint, Hull knew of the Ricciardi report but failed to provide it to the Hospital committees or include it in the "exhibit list and packets for the September 2003 hearing." *Id.* at ¶ 19. Wilkey also claims that his attorney requested the Ricciardi report from Hull during the suspension hearings but Hull declined to give him the report "solely because Dr. Ricciardi's report was not on the [Medical Executive Committee] exhibit list." *Id.* at ¶ 42. According to the complaint, Hull knew that the report was "important" and that Hospital regulations required that he produce it. *Id.* at ¶ 36. Wilkey claims that had he obtained the report, he would have introduced it into evidence during his suspension proceedings and that this would have aided his case. The Hospital eventually suspended Wilkey.

Wilkey later brought an action in federal court against the Hospital, some of its medical staff, and various other individuals. The complaint asserted a variety of claims including violation of state and federal antitrust law, fraud, tortious interference with a written contract, tortious interference with a business relationship, knowingly filing a false data-bank report, defamation, denial of due process, breach of contract, negligence, and civil conspiracy. According to Wilkey, it was during these proceedings that he learned of the facts underlying his current complaint.

2

The litigation against the Hospital ultimately settled, but on March 1, 2007, Wilkey brought this action in the United States District Court for the Southern District of Ohio against Hull and Defendant-Appellee Millikin & Fitton, the law firm with which Hull was associated while working for the Hospital. In his complaint, Wilkey alleged that the Defendants are liable for tortious interference with or destruction of evidence, violating Federal Rule of Civil Procedure 60(B)(3), violating Ohio's evidence and record-tampering statutes, conspiring to conceal evidence, failing to follow hospital rules and regulations, fraud, tortious interference with a business relationship, denial of due process, negligence, and civil conspiracy. Doc. 1. The Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), and the district court granted this motion with respect to all but the fraud and negligence claims and further found that Millikin & Fitton was not vicariously liable for any torts committed by Hull. The district court later denied Wilkey's motion to amend his complaint. Finally, after a period of discovery, the district court granted the Defendants' motion for summary judgment as to the remaining claims. Wilkey appeals only the district court's dismissal of his claims of tortious interference with evidence and tortious interference with a business relationship and the grant of summary judgment as to his fraud claims.

## II. ANALYSIS

### A. Claims of Tortious Interference with Evidence and Tortious Interference with a Business Relationship

#### 1. Standard of review

Because Wilkey's claims of tortious interference with evidence and tortious interference with a business relationship were both dismissed at the pleading stage, the normal federal pleading rules apply. *See Minger v. Green*, 239 F.3d 793, 799-801 (6th Cir. 2001) (applying federal pleading rules

3

in diversity case). This court reviews de novo a dismissal under Federal Rule of Civil Procedure 12(b)(6). *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 608-09 (6th Cir. 2009). We accept as true all non-conclusory allegations in the complaint and determine whether they state a plausible claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

### 2. Tortious Interference with or Destruction of Evidence

Wilkey claims that Hull is liable for tortious interference with or destruction of evidence ("TIDE") because Hull "withheld . . . [the Ricciardi report from] Dr. Wilkey and his legal counsel." Doc. 1 (Compl. at ¶ 46). The elements of a TIDE claim are:

> (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts.

*Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993).

Ohio law is not entirely clear as to what the third prong of this test requires. Some cases suggest that "concealment" of or "interference" with evidence might suffice. *See Drawl v. Cornicelli*, 706 N.E.2d 849, 851-52 (Ohio Ct. App. 11th Dist. 1997). Other Ohio cases require something closer to literal, physical destruction of evidence. *See Pratt v. Payne*, 794 N.E.2d 723, 727-28 (Ohio Ct. App. 2d Dist. 2003); *Tate v. Adena Reg'l Med. Ctr.*, 801 N.E.2d 930, 936-37 (Ohio Ct. App. 4th Dist. 2003); *Williams v. Cont'l Express Co.*, No. 17-08-10, 2008 WL 4559978, at *3 (Ohio Ct. App. 3d Dist. Oct. 14, 2008) ("Ohio courts have declined to extend spoliation claims beyond the destruction of physical evidence."). Wilkey does not allege that Hull destroyed the Ricciardi report, and even if the "destruction" prong of the *Smith* test is broadly construed to include other forms of "concealment," we still conclude that Wilkey would have to show some affirmative

4

act beyond the failure to disclose. Indeed, we are aware of no Ohio case where the mere refusal to produce a document was held to constitute a TIDE claim, and we note that the cases that Wilkey cites involved the *alteration* of documents, not the withholding of them. *Drawl*, 706 N.E.2d at 852; *Hicks v. Bryan Med. Group, Inc.*, 287 F. Supp. 2d 795, 810 (N.D. Ohio 2003). Here, Hull simply did not disclose the report to Wilkey when asked to do so.

We recognize that the Ohio Supreme Court in *Davis v. Wal-Mart Stores, Inc.* suggested that the "misrepresenting" or even "withholding"of evidence might be an actionable wrong. 756 N.E.2d 657, 658-59 (Ohio 2001). However, we are reluctant to rely too heavily upon the *Davis* case as the court there was focused solely on whether the TIDE claim was barred by res judicata. *Id.* at 658-60. Moreover, numerous decisions of the Ohio courts of appeals have concluded that this language in *Davis* was nonbinding dicta. *See Pratt*, 794 N.E.2d at 727-28; *Tate*, 801 N.E.2d at 937; *Bugg v. Am. Std., Inc.*, No. 84829, 2005 WL 1245043, at *5-6 (Ohio Ct. App. 8th Dist. May 26, 2005). In any event, no misrepresentation occurred here as the complaint does not allege that Hull ever denied the existence of the report or spoke to its contents. Rather, Wilkey alleges that his attorney requested all external reports and that Hull refused on the grounds that Wilkey's attorney "had known of . . . potential witnesses and exhibits . . . since June" and "Ricciardi's report was not on the MEC exhibit list." Doc. 1 (Compl. at ¶ 42). Nor do we think Hull "withheld" evidence for purposes of a TIDE claim. *Davis* involved a case where the plaintiff did not discover the alleged withholding until after the end of the lawsuit. *Davis*, 756 N.E.2d at 658. Here, by contrast, Hull's actions, as alleged by Wilkey, were never disguised—Hull stated he was not going to hand over any external reports and gave reasons for doing so. In other words, the present case involves little more than a discovery dispute, and we do not think that Ohio courts would be willing to stretch the TIDE doctrine to such

5

an extent. We therefore conclude that the district court did not err in dismissing Wilkey's TIDE claim for failure to state a claim on which relief can be granted.

### 3. Tortious Interference with a Business Relationship

Wilkey also argues that Hull's actions interfered with Wilkey's business relationship with "patients, referring physicians and insurers." Doc. 1 (Compl. at ¶ 92). A tortious interference with a business relationship ("TIBR") occurs when:

> [A] person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another.

*A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (Ohio 1995). Wilkey, however, has not alleged that any individuals terminated, or decided not to enter into, relationships with him as a result of Hull's actions—Wilkey merely states that Hull "interfered" with certain unspecified business relationships. This vague assertion of interference, however, is just a "legal conclusion" that is itself entitled to no weight. *See Iqbal*, 129 S. Ct. at 1949. Absent some factual allegation that Hull's actions ended or prevented a business relationship, Wilkey does not state a claim. *Cf. Smith v. Ameriflora 1992, Inc.*, 644 N.E.2d 1038, 1044 (Ohio Ct. App. 10th Dist. 1994) ("A tortious interference action . . . requires a showing that [the defendant's] actions induced or caused a third party to discontinue a business relationship with [the plaintiff]").

On appeal, Wilkey argues that his relationship with the Hospital was terminated as a result of his suspension. Appellant Br. at 41. However, the TIBR theory he sets forth in his complaint is not predicated on this relationship—the section of his complaint addressing his TIBR claim only refers to "patients, referring physicians and insurers." Doc. 1 (Compl. at ¶ 92). Wilkey cannot

6

pursue a theory on appeal of which his complaint gave no notice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that a complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests" (alteration in original and internal quotation marks omitted)). Therefore, we conclude that the district court did not err in dismissing Wilkey's TIBR claim.

## B. Fraud

### 1. Standard of Review

The district court dismissed Wilkey's fraud claim at the summary-judgment stage. "Summary judgment should be granted only when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Hall v. Spencer County, Ky.*, 583 F.3d 930, 933 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). "When we review a motion for summary judgment, we must view all facts and inferences in the light most favorable to the non-moving party." *Id*. We review de novo a district court's decision to grant summary judgment. *Dillon v. Cobra Power Corp.*, 560 F.3d 591, 595 (6th Cir. 2009).

### 2. Merits

Wilkey argues that Hull's "refusal to reveal the *substance* of the [Ricciardi] report constitutes a fraudulent concealment under Ohio law." Appellant Br. at 24. To prove fraud, the plaintiff must show

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying

7

upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984) (internal quotation marks omitted).

Here there are a variety of potential issues regarding whether Wilkey has a viable fraud claim, such as whether Hull had a duty to disclose anything or whether there is evidence that Hull intended to mislead Wilkey. However, we need not decide these questions because Wilkey's fraud claim warrants summary judgment on the basis that Wilkey failed to offer any evidence that he actually relied on any representation or omissions Hull might have made. In fact, Wilkey's testimony in his prior federal lawsuit indicates quite the opposite. On direct examination, Wilkey's attorney asked whether he "or [his] counsel ever receive[d] a report from Dr. Ricciardi." Doc. 67-5 (Ex. NNNNN at 2). Wilkey responded: "No. We did know it was out there, though, *and we always suspected it was favorable to us* because they gave me the C.V. of the guy. They even asked me . . . 'Is this guy acceptable to you to review?'" *Id.* (emphasis added). In other words, even if Hull were engaging in deceptive practices, Wilkey and his attorney were not deceived into thinking that the report was not favorable to him and therefore could not have relied on that assumption. Wilkey continues to assert that he was put "on unequal footing" in front of the hearing board. Appellant Br. at 25. However, a claim of fraud is concerned only with reliance on deception and provides no relief to those who see past the misrepresentations with which they are confronted. *See Bryans v. English Nanny & Governess Sch., Inc.*, 690 N.E.2d 582, 590 (Ohio Ct. App. 8th Dist. 1996) (finding that there was no fraud when the plaintiff, by her own admission, "knew what [she] was getting [herself] into" (internal quotation marks omitted)); *see also Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 506 (6th Cir. 2003) (holding that, under Ohio law, fraud claim failed because there was no evidence of

8

reliance).[2]  Therefore, in the absence of evidence of reliance by Wilkey, the district court properly granted summary judgment in Hull's favor with respect to Wilkey's fraud claim.

## C. Statute of limitations

We decline to address the Defendants' additional argument that this case is barred by the one-year statute of limitation for legal malpractice claims as we affirm the district court's judgment on other grounds.

## III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's judgment.

---

[2]To the degree that Wilkey argues that the hearing panel relied upon Hull's alleged concealment, this does not matter as it is *only the plaintiff's* reliance that is relevant.  *See Jackson v. Sunnyside Toyota, Inc.*, 887 N.E.2d 370, 373 (Ohio Ct. App. 8th Dist. 2008).