PRATT, Admr., et al., Appellants,

v.

PAYNE et al., Appellees.

[Cite as Pratt v. Payne, 153 Ohio App.3d 450, 2003-Ohio-3777.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19577.

Decided July 3, 2003.

Alfred J. Weisbrod and Steven K. Dankof, for appellants.

Charles J. Faruki, Jeffrey T. Cox and Melinda K. Burton, for appellee, Stephen R. Payne, M.D.

Gary W. Hammond and James M. McGovern, for defendant, OHIC Insurance Company.

---

Brogan, Judge.

{¶ 1} In June 1995, David Shaffer died as a result of seizures and related cardiac arrest. Subsequently, Robert Pratt, administrator of the estate of David R. Shaffer, Donald Shaffer, and Sarah Shaffer ("appellants"), filed a medical malpractice action against two hospitals and four physicians, including Dr. Muskesh Patel. Patel was the internist who had admitted Shaffer to the intensive care unit of Wilson Memorial Hospital shortly before Shaffer's death. On admission, Shaffer had low blood platelets (thrombocytopenia), blood in the urine (hematuria), and pancreatitis. According to appellants, Dr. Patel deviated from appropriate standards of medical care by failing to consult with a hematologist immediately. Appellants further claimed that the deviation caused Shaffer's death.

{¶ 2} At trial, the defense presented testimony from an expert witness, Dr. Stephen Payne, who testified that Patel did not deviate by failing to immediately consult a hematologist. Although appellants presented expert testimony to the contrary from two experts, the jury found in favor of Dr. Patel.

{¶ 3} About three months after trial, appellants' attorney discovered, by chance, that Dr. Payne had given seemingly inconsistent testimony in a medical malpractice case in another county. Consequently, appellants filed a motion to set aside the verdict in favor of Patel, under Civ.R. 60(B)(2), (3), and (5). The trial court denied the motion without providing an evidentiary hearing, and appellants appealed. We affirmed, finding that the trial court did not abuse its discretion by denying the motion without a hearing. See *Pratt v. Wilson Mem. Hosp.*, Montgomery App. No. 19453, 2003-Ohio-2401, 2003 WL 21060836, ¶ 2 (*Pratt I*). In particular, we agreed with the trial court that in the subsequent case, Dr. Payne was "expressing a different opinion, based upon different facts." Id. at ¶ 23.

{¶ 4} In addition to the motion for relief from judgment, appellants sought to remedy their damages by filing a separate action against Dr. Payne and OHIC Insurance Company ("OHIC"), the company that insured Dr. Patel. In the complaint, appellants alleged that Dr. Payne committed "intentional acts of spoliation" in *Pratt I* by falsely testifying about the standard of care for an

internist caring for a patient with critical thrombocytopenia. The complaint further alleged that Dr. Payne had given a diametrically opposed opinion in another medical malpractice case with essentially the same facts. According to appellants, OHIC hired Dr. Payne, knew or should have known that Payne's testimony was false, and committed intentional acts of spoliation individually and in conjunction with Dr. Payne.

{¶ 5} Both Dr. Payne and OHIC filed Civ.R. 12(B)(6) motions to dismiss, and the trial court granted the motions. Appellants now appeal, raising the following assignments of error:

{¶ 6} "I. The Common Pleas Court of Montgomery County, Ohio erred to the prejudice of Plaintiffs–Appellants when it found beyond doubt from the allegations and pleadings that there was no set of facts which could conceivably be proved by Plaintiffs–Appellants which would allow their case against Defendants–Appellees, Stephen Payne, M.D. and OHIC Insurance Company, to be submitted to a jury.

{¶ 7} "II. The Common Pleas Court of Montgomery County, Ohio, erred to the prejudice of Plaintiffs–Appellants when it found that intentionally false or misleading expert opinion testimony does not constitute the tort of intentional spoliation of evidence as articulated by the Ohio Supreme Court in *Davis v. Wal–Mart Stores*, Inc. (2001), 93 Ohio St.3d 488, 756 N.E.2d 657."

{¶ 8} After considering the record and applicable law, we find the assignments of error to be without merit. Accordingly, the trial court judgment will be affirmed.

{¶ 9} In their brief, appellants combine the discussion of both assignments of error. Accordingly, we will do the same. The critical issue to be resolved is whether appellants may pursue claims against Dr. Payne and OHIC due to Dr. Payne's alleged perjury in a prior civil case.

{¶ 10} Like most jurisdictions, Ohio does not permit civil actions against persons who give false testimony in judicial proceedings. See, *e.g., Costell v. Toledo Hosp.* (1988), 38 Ohio St.3d 221, 223–224, 527 N.E.2d 858, and *Schmidt v. State Aerial Farm Statistics, Inc.* (1978), 62 Ohio App.2d 48, 51, 16 O.O.3d 85, 403 N.E.2d 1026. This prohibition is based on public policy. *Reasoner v. State Farm Mut. Auto. Ins. Co.* (Mar. 5, 2002), Franklin App. No. 01AP–490, 2002 WL 338133, * 4. Specifically, witnesses must be at liberty to speak freely, without fear of being sued later for their testimony. *Erie Cty. Farmers' Ins. Co. v. Crecelius* (1930), 122 Ohio St. 210, 214, 171 N.E. 97.

{¶ 11} Appellants concede that claims for civil perjury have not historically been allowed. Nonetheless, they contend that different considerations exist where expert testimony is involved. In this regard, appellants note that modern

expert testimony is both voluntary and lucrative. As a result, experts are tempted to sacrifice integrity for personal gain.

{¶ 12} While this argument has surface appeal, similar considerations apply to both involuntary and voluntary witnesses. In the first place, witnesses often appear without being subpoenaed—or, if they are subpoenaed, the "compulsory" part of the process is largely a matter of form. Furthermore, even if witnesses are compelled to testify, they may still commit perjury or distort the truth for many reasons, including financial gain.

{¶ 13} We think protecting the freedom of witnesses is an important goal. Equally crucial, however, is the need for finality in litigation. If civil recovery for perjury were available, finality would be a thing of the past, since "many cases would be tried at least twice; first on the merits and then to see who lied at trial." *Dexter v. Spokane Cty. Health Dist.* (1994), 76 Wash.App. 372, 375, 884 P.2d 1353.

{¶ 14} As proof that problems with finality and proliferation of lawsuits would not occur, appellants offer the example of Maine, which is self-described as the only state that allows civil actions for perjury. See *Spickler v. Greenberg* (Me.1994), 644 A.2d 469, 470, fn. 1. According to appellants, Maine has statutorily allowed civil perjury actions since 1864 without experiencing problems. Appellants contend that this is persuasive evidence that Ohio should adopt the same policy. However, after reading *Spickler,* we do not feel that the trend is one we want to follow.

{¶ 15} Specifically, the litigation in *Spickler* arose from a $20,000 brokerage commission due on sale of property that was listed in 1979. The litigation ended in 1994, after almost 14 years, and encompassed two separate lawsuits and three appeals. Id. at 470–471. The first lawsuit ended in 1984, with a verdict for defendant (the seller), who escaped paying the commission. Subsequently, in 1985, the plaintiff brought a civil perjury lawsuit against the defendant, the defendant's lawyers, and the buyers of the property, alleging that the defendant and one buyer had committed perjury in the first trial. The second lawsuit lasted nine years, through a trial and two appeals. Even during the last appeal, in 1994, the case would have been reversed and remanded for yet another trial, due to an incorrect trial court ruling on the burden of proof. Fortunately, however, the appellate court found a technicality and entered judgment for the remaining defendant, to finally put the litigants out of their misery. Id. at 471–472. As we said, this is not a process we want to emulate.

{¶ 16} Appellants additionally contend that the Ohio Supreme Court created a civil action for perjury in civil cases in *Davis v. Wal–Mart Stores, Inc.* (2001), 93 Ohio St.3d 488, 756 N.E.2d 657. In this regard, appellants rely on the fact that the spoliation claim in *Davis* included allegations that "Wal–Mart had withheld

certain evidence and documents and that several employees of Wal–Mart had provided false or misleading testimony during their depositions" in the prior tort case. 93 Ohio St.3d at 489, 756 N.E.2d 657. Since the Ohio Supreme Court allowed the claim to proceed, appellants believe that the court implicitly recognized that "providing or encouraging false or misleading testimony is actionable as spoliation." We disagree.

{¶ 17} As we mentioned, Ohio has historically denied civil actions for perjury. In 1983, the Ohio Supreme Court held in *Willitzer v. McCloud* (1983), 6 Ohio St.3d 447, 6 OBR 489, 453 N.E.2d 693, that an "independent physician" examining claimants at the request of the Industrial Commission was not absolutely immune from civil suit based on his examination. Id. at syllabus. The court's decision was based on a "festering evil" at the commission, where a small minority of physicians were "willing to sell their expertise for a substantial price." Id. at 450, 6 OBR 489, 453 N.E.2d 693. Nonetheless, the court stressed that physicians would be liable only for conducting an inadequate examination and that absolute witness immunity would still apply to the physician's report and testimony at an adjudicatory hearing. Id. at 450, 6 OBR 489, 453 N.E.2d 693.

{¶ 18} In 1988, the court reiterated, in *Costell,* that "perjury, subornation of perjury, and conspiracy to commit perjury" may not be the basis of civil lawsuits. 38 Ohio St.3d 221, 223–224, 527 N.E.2d 858. Like *Pratt I, Costell* was a medical malpractice action. However, the plaintiff tried to add a "prima facie tort" claim to the case, by alleging that the doctor and hospital had orchestrated and coerced testimony, resulting in testimony being " 'suppressed, altered, distorted, and/or misrepresented.' " Id. at 223, 527 N.E.2d 858. The court rejected this theory and reiterated that perjury in a civil case is not actionable.

{¶ 19} Subsequently, in 1993, the Ohio Supreme Court held that, in Ohio, a cause of action in tort exists for interference with or destruction of evidence. *Smith v. Howard Johnson Co., Inc.* (1993), 67 Ohio St.3d 28, 29, 615 N.E.2d 1037. The elements of this tort (also called spoliation of evidence) were outlined as follows:

{¶ 20} "(1) [P]ending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." Id. at 29, 615 N.E.2d 1037.

{¶ 21} After *Smith,* no court in Ohio (at least that our research has disclosed) has extended spoliation to anything other than the destruction of physical evidence. See, e.g., *Hampton v. St. Michael Hosp.,* Cuyahoga App. No. 81009, 2003-Ohio-1828, 2003 WL 1848772, ¶ 52; *Drawl v. Cornicelli* (1997), 124 Ohio App.3d 562, 568, 706 N.E.2d 849; and *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69

Ohio St.3d 638, 650, 635 N.E.2d 331 (alteration of medical records); *Meros v. Mazgaj* (Apr. 30, 2002), Trumbull App. No. 2001–T–0100, 2002 WL 819219, * 5 (destruction of contingent fee agreement); *McGuire v. Draper, Hollenbaugh & Briscoe Co., L.P.A.,* Highland App. No. 01CA21, 2002-Ohio-6170, 2002 WL 31521750, ¶ 77 (destruction of client file); *White v. Ford Motor Co.* (2001), 142 Ohio App.3d 384, 386–387, 755 N.E.2d 954 (destruction of car); *Carnahan v. Buckley* (Mar. 28, 2001), Mahoning App. No. 99 CA 323, 2001 WL 315316, * 3 (lack of preoperative photographs); *Matyok v. Moore* (Sept. 1, 2000), Lucas App. No. L–00–1077, 2000 WL 1232417, * 3 (disposal of cracked staircase); *Williamson v. Rodenberg* (June 30, 1997), Franklin App. No. 96APE10–1395, 1997 WL 360840, * 4 (missing behavioral ·interviewing materials); *Cechowski v. Goodwill Industries of Akron, Ohio, Inc.* (May 14, 1997), Summit App. No. 17944, 1997 WL 270523, * 9 (destruction of documents); *Sheets v. Norfolk S. Corp.* (1996), 109 Ohio App.3d 278, 288–289, 671 N.E.2d 1364 (destruction of dispatcher tapes); *Webster v. Toledo Edison Co.* (Nov. 1, 1996), Lucas App. No. L–95–342, 1996 WL 629486, * 13 (destruction of broken tire studs); *Cherovsky v. St. Luke's Hosp. of Cleveland* (Dec. 14, 1995), Cuyahoga App. No. 68326, 1995 WL 739608, * 11 (missing pathology slides); and *Tittle v. Rent–A–Wreck* (Sept. 24, 1993), Belmont App. No. 92–B–51, 1993 WL 373842, * 3 (missing car parts).

{¶ 22} In 2001, the Ohio Supreme Court again discussed the spoliation doctrine. See *Davis,* 93 Ohio St.3d 488, 756 N.E.2d 657. However, the only issue decided in *Davis* was whether res judicata barred the spoliation action (which was filed after judgment was rendered in the original tort action). In this regard, the Ohio Supreme Court held that res judicata was inapplicable because the original intentional tort claim and ·the spoliation claim did not arise from a common nucleus of operative facts. 93 Ohio St.3d 488, 490, 756 N.E.2d 657. In dissent, Justice Cook argued that the majority had improperly broadened the existing elements of spoliation by implying that "evidence of concealment, interference, and/or misrepresentation may satisfy the 'willful destruction' element of the tort." Id. at 495, 756 N.E.2d 657 (Cook, J., dissenting).

{¶ 23} Appellants contend that Justice Cook was correct and that the *Davis* majority did, in fact, broaden spoliation to include claims based on perjury. Again, we disagree, since the lack of civil liability for perjury was raised in the trial court in *Davis* but was not addressed either by the trial court or in the appellate decisions. In fact, when the court of appeals reversed the trial court's res judicata finding, it directed the trial court to address the perjury issue on remand. See *Davis v. Wal–Mart* (Apr. 27, 2000), Cuyahoga App. No. 75224, 2000 WL 504114, * 2, fn. 1, affirmed, (2001), 93 Ohio St.3d 488, 756 N.E.2d 657. On further appeal, the Ohio Supreme Court simply affirmed the court of appeals' res judicata decision. 93 Ohio St.3d at 489–491, 756 N.E.2d 657.

{¶ 24} In view of these facts, we cannot agree that the Ohio Supreme Court impliedly broadened the tort of spoliation. If the court intended to depart from lengthy historical precedent, it would have explicitly said so. Moreover, no other Ohio case, before or after *Davis,* has applied spoliation in a broader context. We decline to be the first to take such a position, particularly in the absence of clear direction from the Ohio Supreme Court.

{¶ 25} In this regard, the reasoning of *Hokanson v. Lichtor* (1981), 5 Kan. App.2d 802, 626 P.2d 214, is instructive. Like the present case, *Hokanson* involved a defense medical expert who was alleged to have committed perjury at trial. 5 Kan.App.2d at 803, 626 P.2d 214. After the jury awarded the plaintiff only $50, a new trial was awarded. While awaiting retrial, plaintiff filed suit against the defendant's attorney and insurer and the doctor who had testified, alleging that they had conspired to present perjured testimony. Id. at 804, 626 P.2d 214. In rejecting the claims for perjury and conspiracy, the court stated the following:

{¶ 26} "We adopt the reasoning of the majority of jurisdictions that litigants must have access to expert opinion evidence and witnesses must be available to testify without fear of having to incur fees and expenses to defend their testimony in subsequent actions, which would do nothing more than 'rehash' the same issue determined in an original case; i.e., what testimony is the jury to believe? Litigation must end at some point. To permit actions such as plaintiff contemplates in this case might ultimately result in depriving the judicial system of expert witnesses who are invaluable to all segments of the bar. Most improvements in science, the law and society have resulted because some person has thought and expressed views different from the prevailing view. The advocacy system is designed to test those views, and the trier of facts decides whether to accept or reject the opinion evidence of an expert or the testimony of a nonexpert. Here, through discovery, the plaintiff had an opportunity to learn of and expose any perjury that in his opinion defendants had committed. The courts must zealously protect the rights of all litigants to present their evidence within the framework of the law. If perjury is committed in a trial, a litigant is not left helpless; procedure is available to obtain a new trial. Criminal penalties are available against the perjurers and those who engage in a conspiracy to commit perjury. Disciplinary rules are available to punish lawyers who engage in such reprehensible conduct." Id. at 810–811, 626 P.2d 214.

{¶ 27} We agree with these comments. Admittedly, the alleged perjury in this case was not uncovered until after trial. However, in *Pratt I,* appellants followed procedures for setting aside the former judgment. Unfortunately for appellants, the attempt was unsuccessful. Nevertheless, this lack of success is not a reason to change the law, particularly since criminal penalties and disciplinary sanctions

are also available. Based on well-established historical precedent, appellants may not file an action for perjury or conspiracy to commit perjury.

{¶ 28} Appellants' final argument is that they have asserted valid fraud claims against Dr. Payne and OHIC. In this context, appellants point to an immunity exception for situations where perjury or subornation of perjury is part of a larger scheme to defraud. In *Hokanson*, the court of appeals noted an exception to the general rule, which permits a fraud cause of action where there are "pleadings alleging more than mere perjury and encompassing fraud and deceit by false and fraudulent acts." 5 Kan.App.2d 802, 809, 626 P.2d 214, citing *Verplanck v. Van Buren* (1879), 76 N.Y. 247, 1879 WL 10618. However, the court refused to apply the exception because the only "overt act" in the pleadings was the alleged perjury. Id. Compare *Morgan v. Graham* (C.A.10 1956), 228 F.2d 625 (sustaining fraud action where other acts besides perjury were involved).

{¶ 29} Since appellants' complaint did not specify any "overt acts" besides Dr. Payne's alleged perjury, we need not decide whether Ohio would permit an exception to the general rule. Even if an exception were allowed, the alleged perjury is the basis for the complaint. We have already decided, consistent with our review of Civ.R. 12(B)(6) matters, that appellants can prove no set of facts that would warrant a recovery, even if we construe the allegations of the complaint as true and make all reasonable inferences in favor of appellants. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. Accordingly, the trial court did not err in dismissing appellants' complaint.

{¶ 30} In light of the foregoing discussion, assignments of error one and two are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

Wolff and Frederick N. Young, JJ., concur.